Filed 9/17/13  Wawock v. Super. Ct. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICHARD WAWOCK,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>CSI ELECTRICAL CONTRACTORS, INC.,<br><br>    Real Party in Interest. | No. B248269<br><br>(L.A. Super. Ct. No. BC492586) |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Elihu M. Berle, Judge.  Writ denied.

Hayes Pawlenko, Matthew B. Hayes and Kye D. Pawlenko for Petitioner.

Snell & Wilmer, Frank Cronin, Steve T. Graham and Todd E. Lundell for Real Party in Interest.

No appearance for Respondent.

_____

Plaintiff Richard Wawock petitions for a writ of mandate. He seeks to have respondent court vacate its order referring to an arbitral body the question of whether his statutory wage and hour claims are subject to the grievance and arbitration procedure of his collective bargaining agreement. We deny the petition.

## FACTS AND PROCEDURAL HISTORY

Wawock is an electrician and a member of Local Union 11 of the International Brotherhood of Electrical Workers (Union). He was employed by CSI Electrical Contractors (CSI Electrical) from 2006 to 2007 and 2009 to 2013. On September 21, 2012, Wawock brought a class action against CSI Electrical asserting that it failed to pay wages to its electricians for time spent attending mandated training courses on topics such as safety, first aid, and preventing harassment. He stated causes of action for violation of the Labor Code and controlling Wage Orders regarding payment of wages or overtime, payment of minimum wages, reimbursement of travel expenses, provision of accurate wage statements, and timely payment of wages. He also sought an injunction and attorney fees under the unfair competition law, Business and Professions Code section 17200 et seq., and penalties and attorney fees under the Private Attorneys General Act, Labor Code section 2698 et seq.

CSI Electrical is a member of the Los Angeles County Chapter of the National Electrical Contractors Association (Chapter). The Chapter had engaged in collective bargaining with the Union and had entered an agreement covering all members of those two organizations. Upon receiving a copy of Wawock's complaint, CSI Electrical filed a grievance with the Union asserting that by filing his complaint, Wawock had violated the collective bargaining agreement. CSI Electrical also brought a "Motion to Compel Arbitration" before respondent court, seeking an order compelling Wawock to submit his claims to the grievance and arbitration procedure established by the collective bargaining

2

agreement and dismissing the complaint.[1]  CSI Electrical argued that Wawock's claims were essentially seeking wages due, were covered by the terms of the collective bargaining agreement, and had to be resolved through the grievance and arbitration procedure contained therein.  Further, it asserted the very question of whether Wawock's claims were subject to the grievance and arbitration procedure was for a labor-management committee in charge of the procedure to decide, not the court.

The grievance and arbitration procedure is set forth in Article I of the collective bargaining agreement.[2]  It requires that "all grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement.  In the event that these two are unable to adjust any matter within forty-eight (48) hours, they shall refer the same to the Labor-Management Committee [(Committee)]," a committee consisting of three labor and three management representatives.  Should the Committee fail to resolve an issue, then it would be referred to binding arbitration.

Additional provisions contained in Article VII of the collective bargaining agreement elaborate on the Committee's powers.  Section 7.56 specifically provides:

> "The Labor-Management Committee shall have the right not only to
> determine whether there has been a violation of this Agreement, but shall
> also have the right to devise an appropriate remedy consistent with the
> interpretation and applicable [*sic*] of this Agreement, including allowance
> of attorney[] fees, cost of enforcement and interest from the date of decision
> . . . .  In addition, the Labor-Management Committee shall have the right to
> determine whether a party cited before these bodies have been properly
> cited and whether the provisions for notice [contained elsewhere in Article

---

[1]  Initially, CSI Electrical attempted to remove Wawock's complaint to federal court based on preemption, but the District Court remanded the matter to respondent court.

[2]  Two consecutive collective bargaining agreements covered Wawock's time at CSI Electrical.  Each contains the same language regarding the grievance and arbitration procedure so they are referred to singularly.

VII] have been complied with. The Labor-Management Committee shall have the further right to determine whether a party is signatory to this Agreement, whether any particular dispute is subject to the grievance procedure of this Agreement, and shall have the right to determine any and all defenses and contentions, legal or otherwise, raised by any person. . . ."

In support of its motion to compel, CSI Electrical submitted the undisputed declaration of the executive director of the Chapter, who is also a member of the Committee. He stated that during his time on the Committee, Articles I and VII of the collective bargaining agreement have always been understood to constitute a single grievance procedure. While he acknowledged the collective bargaining agreement does not cover the issue of compensation for attending all types of training sessions, he indicated the parties have entered a memorandum of understanding regarding payment of a stipend from Union funds to electricians receiving specialized safety training and opined that similar treatment of all training classes was appropriate.

Respondent court granted CSI Electrical's motion. The court found committing the gateway question of whether the dispute was subject to the grievance and arbitration procedure to the Committee was clear and unmistakable. Respondent court therefore ordered the parties to place the matter before the Committee for a decision. It stayed the action pending "resolution of the question of arbitrability."[3] Wawock filed this petition for writ of mandate challenging respondent court's ruling. We issued an alternative writ of mandate and set the matter for briefing and oral argument. We now deny the petition.

---

[3] CSI Electrical requests that we take judicial notice of the Committee's subsequent finding that Wawock's claims are subject to the collective bargaining agreement's grievance and arbitration procedure. The request is denied. The decision occurred after the ruling under review so it is not properly part of the record. (*People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1173, fn. 5.)

4

**DISCUSSION**

The parties have a substantial dispute over whether Wawock's statutory wage claims are covered by the collective bargaining agreement and so subject to the grievance and arbitration procedure set forth in that contract. However, there is an initial question that must be answered before such a determination can be made. That is "who" should decide the issue—the Committee or the court. After consideration of the language of the agreement and the relevant case law, we conclude the Committee was given authority to make the determination.[4]

The United States Supreme Court has repeatedly set forth the relevant principles for determining who decides threshold issues of arbitrability. In *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___ [130 S.Ct. 2772, 2776], the court confirmed that arbitration is a matter of contract. The contracting parties are free to designate who should consider whether a given dispute is subject to arbitration. (*Id.* at p. ___ [130 S.Ct. at p. 2777].) There is a presumption that the court will decide such issues because parties are not expected to anticipate that an arbitrator will determine his or her own jurisdiction. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944-945 (*Kaplan*); *AT&T Technologies, Inc. v. Communications Workers* (1986) 475 U.S. 643, 649.) Nevertheless, if the parties manifest a clear and unmistakable intent to commit threshold determinations of arbitrability to the arbitrator, their agreement must be upheld. (*Kaplan*, *supra*, at p. 944; see also *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ___ [133 S.Ct. 2304, 2309].)

In determining whether a particular contract manifests clear and unmistakable intent, we apply the usual rules of contract interpretation. (*Kaplan*, *supra*, 514 U.S. at p. 944; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553 (*Dream Theater*).) Language will be given its ordinary meaning, and the parties' intent given

---

[4]     Wawock does not dispute CSI Electrical's assertion that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies to the collective bargaining agreement at issue in this case. We do not consider the issue further.

effect. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437 (*Greenspan*).) The terms of the collective bargaining agreement must be read as a whole. (*General Precision, Inc. v. International Association of Machinists* (1966) 241 Cal.App.2d 744, 746-747.) Applying those principles here, the agreement at issue reveals the parties' intent to have the Committee decide whether Wawock's claims are subject to the grievance and arbitration procedures.

The dispositive clause of the agreement appears in section 7.56, providing broadly that the Committee shall decide "whether any particular dispute is subject to the grievance procedure of this Agreement." The entirety of section 7.56 operates to give the Committee overarching authority to determine who is subject to the agreement, whether the terms of the collective bargaining agreement were met, and what remedies would be appropriate to resolve any given dispute. Reading those provisions as a whole and in their plain and ordinary sense, and keeping in mind that they are contained in a collective bargaining agreement, the parties' intent to have all disputes between them reviewed by the Committee, and an arbitrator if necessary, is manifest. While it is true that CSI Electrical's witness acknowledges compensation for some of the training sessions at issue were not specifically addressed in the agreement, Wawock does not dispute the witness's further statement that the parties have reached a memorandum of understanding as to how other training requirements will be compensated or his conclusion that the training Wawock mentions should be handled similarly. Given such undisputed testimony to buttress the terms of the agreement, the parties' intent remains clear.

Wawock asserts that even if the contract clearly and unmistakably gives authority to the Committee to decide arbitrability, the court should still find the attempt to bring his statutory wage claims within the grievance and arbitration procedure is wholly groundless within the meaning of *Qualcomm Inc. v. Nokia Corp.* (Fed. Cir. 2006) 466 F.3d 1366, 1371 (*Qualcomm*) and *Dream Theater*, *supra*, 124 Cal.App.4th at page 553.[5]

---

[5]     Wawock suggests the matter must be remanded to the trial court to conduct such an analysis, but because the facts are undisputed, we can make the assessment in the first instance. (*Greenspan*, *supra*, 185 Cal.App.4th at p. 1443.)

He believes it is wholly groundless because the question of whether his claims are arbitrable must be answered in the negative. Wawock's arguments bleed into a discussion of the merits of whether his claims fall within the scope of the collective bargaining agreement, as opposed to who should decide that issue. However, the wholly groundless analysis is a secondary, limited inquiry that is not intended to reach the merits of the arbitrability question, lest the court invade the province of the arbitrator. (*Qualcomm*, *supra*, at pp. 1371, 1374; *Greenspan*, *supra*, 185 Cal.App.4th at p. 1443.)

The court in *Qualcomm*, *supra*, 466 F.3d at page 1373, footnote 5 described a wholly groundless arbitrability claim as something that is divorced from the parties' agreement. The court in *Greenspan*, *supra*, 185 Cal.App.4th at page 1443 noted that the examination focused on the scope of the arbitration agreement and the precise issue involved. Looking to the same factors here, it cannot be said that Wawock's wage claims are so wholly unrelated to the collective bargaining agreement at issue that they cannot fall within the contract's terms. In fact, wages due to Union members is a major element of the collective bargaining agreement, so CSI Electrical can reasonably argue that Wawock's claims fall within the scope of the agreement. While we are not convinced that CSI Electrical's position on the merits of the arbitrability claim is correct, it is a matter that has been committed to the Committee for decision. (See *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 80 [court will not infer from a general contractual provision that the parties intended to waive a statutory right]; *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434-435 [statutory requirements must be adopted sufficiently to become obligations under the contract].) As the United States Supreme Court recently reiterated, courts must not interfere with arbitrators' decisions made within the scope of their authority. (*Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. ___ [133 S.Ct. 2064, 2070-2071].)

**DISPOSITION**

The petition for writ of mandate is denied.  Each party is to bear its own costs in this proceeding.

KRIEGLER, J.

I concur:

TURNER, P. J.

8

MOSK, J., Dissenting

I dissent.

The contention that the collective bargaining agreement clearly and unmistakably provides for arbitration of statutory claims "is wholly groundless," and therefore, there is no basis for the Labor-Management Committee to decide arbitrability. (See *McCarroll v. L.A. County Etc. Carpenters* (1957) 49 Cal.2d 45, 65; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1443; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553; *Qualcomm Inc. v. Nokia Corp.* (Fed. Cir. 2006) 466 F.3d 1366, 1373-1374.) The authorities render wholly groundless any suggestion that the statutory claim for wages due under the Labor Code and claims made by plaintiff under Labor Code section 2698 et seq. (Private Attorneys General Act or PAGA) and Business and Professions Code section 17200 (Unfair Competition Law) are arbitrable without being covered specifically in the arbitration agreement.

In *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 (*Wright*), a longshoreman sued six stevedore companies in District Court, alleging they had discriminated against him under the Americans with Disabilities Act by refusing to hire him because he made a disability claim in the past. (*Id*. at pp. 74-75.) The District Court, as affirmed by the Fourth Circuit, dismissed the longshoreman's claims, concluding they were subject to the grievance procedures set out in the parties' collective bargaining agreement and a seniority program to which the longshoreman belonged. As in the grievance procedure at issue in this case, the grievance system in *Wright* stated, "'Matters under dispute which cannot be promptly settled between the Local and an individual Employer shall, no later than 48 hours after such discussion, be referred in writing covering the entire grievance to a Port Grievance Committee.'" (*Id*. at p. 72.) If the Port Grievance Committee, which was evenly divided between representatives of labor and management, could not reach an agreement within five days of receiving the complaint, then the dispute was to be referred to a District Grievance Committee, also evenly divided between labor and management. That Committee could reach a "'final and

binding'" decision on the matter by majority vote. If no majority could be reached, then a professional arbitrator would be employed. (*Id*. at pp. 72-73.)

The collective bargaining agreement in *Wright, supra,* 525 U.S. 70, covered "'all matters affecting wages, hours, and other terms and conditions of employment.'" It further stated, "'Anything not contained in this Agreement shall not be construed as being part of this Agreement.'" (*Id*. at p. 73.) Moreover, it stated that "'no provision or part of this Agreement shall be violative of any Federal or State Law.'" (*Ibid*.) The union's seniority program provided for its own, similar grievance procedure presumably regarding matters concerning seniority. (*Id*. at pp. 73-74))

Given that broad language, the U.S. Supreme Court reversed the lower courts' conclusion that the longshoreman's claims under the Americans with Disabilities Act were subject to the grievance procedure. The Court held that a collective bargaining agreement's waiver of a judicial forum for an individual's statutory rights must be clear and unmistakable. "'We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is "explicitly stated." More succinctly, the waiver must be clear and unmistakable.'" (*Id*. at p. 80, quoting *Metropolitan Edison Co. v. NLRB* (1983) 460 U.S. 693, 708.) Because the collective bargaining agreement before the Court was "very general," and simply referred "matters under dispute" into its grievance procedures without explicitly including statutory claims, there was no unmistakable intent to waive the judicial forum for such claims. (*Id*. at pp. 80-81.) Moreover, the Court noted, although claims for "wages, hours and other terms and conditions of employment" were made part of the collective bargaining agreement, the fact that the agreement went on to say "anything not contained in this Agreement shall not be construed as being part of [it]" meant that discrimination claims under the Americans With Disabilities Act could not be construed as part of the conditions of employment. (*Id*. at p. 81.)

The U.S. Supreme Court again addressed whether a collective bargaining agreement could waive an individual's right to a judicial forum with regard to statutory claims in *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247 (*14 Penn Plaza*). There, the

2

Court confirmed that such a waiver could be accomplished provided the terms of the collective bargaining agreement "expressly cover[] both statutory and contractual . . . claims." (*Id*. at p. 264.) The specificity approved by *14 Penn Plaza* brought discrimination claims into the grievance procedure by stating, "'There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.'" (*Id*. at p. 252.) That specificity, which was sufficient for arbitrability in that case, is lacking here.

Other cases involving arbitration clauses similar to the one in the instant case have also recognized that in order to include statutorily-based claims in a grievance procedure, the terms of a collective bargain must be specific, and not general. (See, *Jonites v. Exelon Corp.* (7th Cir. 2008) 522 F.3d 721, 725 [claims under Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA)]; *O'Brien v. Town of Agawam* (1st Cir. 2003) 350 F.3d 279, 284-286 [FLSA claims]; *Eastern Associated Coal Corp. v. Massey* (4th Cir. 2004) 373 F.3d 530 [state statutory workers compensation discrimination and disability discrimination claims]; *Martinez v. J. Fletcher Creamer & Son, Inc.* (C.D. Cal. 2010 WL 3359372 [FLSA claims and California wage and hour claims, including meal period claims]; *Prince v. Coca-Cola Bottling Co.* (S.D.N.Y. 1999) 37 F.Supp.2d 289 [Civil Rights Act]; *Conde v. Yeshiva University* (N.Y. 2005) 792 N.Y.S.2d 387 [wage and hours].)

A union waiver of employee statutory rights in a collective bargaining agreement can "be effected only by the most 'explicit' language, without any resort to inference." (*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 405.) Many California

cases have held that collective bargaining agreements did not clearly and unmistakably require arbitration of statutory claims. They generally involve arbitration clauses that provide that disputes concerning the interpretation and application of the agreement are subject to arbitration. (See, e.g., *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 808 [procedure for resolving disputes involving interpretation or application of the agreement, as well as disputes concerning wages, working hours and conditions]; *Marcario v. County of Orange, supra,* 155 Cal.App.4th at pp. 401, 405-407 [grievance may be filed if management's interpretation of MOU adversely affects employee's wages, hours or conditions of employment]; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 960 [grievance arising out of alleged violation of a specific provision of the agreement]; *Camargo v. Cal. Portland Cement Co.* (2001) 86 Cal.App.4th 995, 1018 [arbitration of any dispute, difference, or grievance as to the meaning and application of and compliance with the provisions of the agreement]; *Vasquez, supra,* 80 Cal.App.4th at p. 433 [all grievances or disputes arising between the parties over the interpretation or application of the terms of the agreement]; *Martinez v. J. Fletcher Creamer & Son, Inc., supra,* 2010 WL 3359372, *1 [grievance procedure for enforcing all the terms and provisions contained in the agreement].) In this case, the collective bargaining agreement's committing "all" grievances and disputes to the grievance procedure does not refer to statutory claims and thus cannot be construed as a clear and unmistakable intent to include Wawock's statutorily-based claims.

In summary, CSI Electric's position that the collective bargaining agreement clearly and unmistakably subsumed all of Wawock's claims is wholly groundless. The trial court should have decided the arbitrability issue, and then declined to send the matter to the grievance procedure.


I would grant the petition.


4

MOSK. J.